HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OLAREE E. HOPPEL,

    Plaintiff,

    v.

PREMERA BLUE CROSS,

    Defendant.

CASE NO. C10-1686RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 34, 36).  Neither party requested oral argument, and the court finds the motion suitable for disposition on the basis of the parties' briefing and supporting evidence.  For the reasons explained below, the court DENIES Plaintiff's motion (Dkt. # 34) and GRANTS Defendant's motion (Dkt. # 36).

## II.  BACKGROUND

From 1971 to 1990, Plaintiff Olaree E. Hoppel was married to Armand Hoppel, who was the president and CEO of the former Blue Cross of Washington and Alaska, Inc. ("Blue Cross").  Blue Cross merged with another entity and changed its name to Premera Blue Cross ("Premera") in 1998.  *See* Pierce Decl. (Dkt. # 40) ¶ 2.  Premera retained all of the liabilities and assets of Blue Cross after the merger.  *See id.*

ORDER – 1

Mr. Hoppel retired from Blue Cross in 1985. Before he did so, he executed two agreements with Blue Cross regarding his retirement benefits. The first agreement ("the Letter Agreement") is memorialized in a letter written by Mr. Hoppel, wherein he proposes that Blue Cross will fund his retirement benefits from three sources: (1) funds from Mr. Hoppel's qualified pension plan, (2) funds owed to Mr. Hoppel under a non-qualified plan, and (3) "a retirement income payable to me monthly as long as I shall live. This payment shall be made directly from Blue Cross in the annual amount of $48,799." Andrews Decl. (Dkt. # 41), Ex. E. Of those three sources, the first two were cashed out and used to purchase annuities — and these annuities are not the subject of this lawsuit. *See* Pltf.'s Mot. at 4. The subject of this lawsuit is the third source, the "retirement income": Ms. Hoppel contends that she has joint and survivor annuity benefits in that income, and Premera contends that her right to as portion of that income ended upon Mr. Hoppel's death in January 2010.

Mr. Hoppel and Blue Cross also entered into a June 15, 1984 retirement agreement ("the Retirement Agreement"). *See* Andrews Decl., Ex. G. The Retirement Agreement explains how the "retirement income" is administered: the $48,800[1] mentioned in the Letter Agreement is part of the payments made under the Retirement Agreement to result in Mr. Hoppel's receipt of $155,000 annually. *See* Andrews Decl., Ex. G (including the Wilson Declaration and the Retirement Agreement itself). The Retirement Agreement does not direct that any payments would continue beyond Mr. Hoppel's death; it is silent as to any survivor benefits.

Upon the Hoppels' 1990 divorce, the Snohomish County Superior Court entered a Qualified Domestic Relations Order ("QDRO") to explain how Mr. Hoppel's retirement benefits would be distributed between Mr. and Ms. Hoppel. *See* Pltf.'s Mot., Ex. 1 (hereinafter referred to as "QDRO"). The QDRO addresses Mr. Hoppel's qualified and

---

[1] Though the Letter Agreement references $48,799, it appears that Blue Cross rounded that amount to $48,800. *See* Andrews Decl., Ex. G (Wilson Declaration ¶ 3).

ORDER – 2

non-qualified plans, and also references the income due under the Retirement Agreement. *See* QDRO ¶ 2. With regard to the payments due under Retirement Agreement, the QDRO provides that Blue Cross shall make the payments to a third-party bank, who shall assign and pay 54% of each payment to Ms. Hoppel and assign and pay the remaining 46% to Mr. Hoppel. *See* QDRO ¶ 3.3. The QDRO also provides that "This assignment does not require the designated plan to provide any type or form of benefit, or any option, not otherwise provided under the plan or agreements. This assignment and order shall not affect the survivor benefit of the annuities payable to Olaree E. Hoppel in the event of the prior death of Armand B. Hoppel, and Olaree E. Hoppel shall remain the primary beneficiary and annuitant as to said portion of the plan." QDRO ¶ 4.

From 1991 to January 2010 (when Mr. Hoppel died), Blue Cross and its successor Premera made monthly payments from their general operating funds to the third-party bank, and those payments were distributed as directed under the QDRO. *See* Gettman Decl. (Dkt. # 38) ¶¶ 2 & 3. After Premera ceased making those payments to Ms. Hoppel after Mr. Hoppel died, Ms. Hoppel filed this lawsuit against Premera, contending that she is entitled to the Retirement Agreement payments until her death under the Retirement Equity Act of 1984 and that she is also entitled to life insurance policies that Premera maintained on Mr. Hoppel's life.

This lawsuit is Ms. Hoppel's second lawsuit related to retirement benefits under the Retirement Agreement: On December 23, 1991, Ms. Hoppel filed a lawsuit in this court against Blue Cross, arguing, *inter alia*, that she was entitled to joint and survivor annuity benefits under 29 U.S.C. § 1055. *See* Andrews Decl., Ex. B (the complaint in the previous lawsuit). In that lawsuit, Blue Cross moved for summary judgment on the grounds that, *inter alia*, because the Retirement Agreement was unfunded, it was not subject to the joint and survivor annuity benefits provisions of 29 U.S.C. § 1055. *See* Andrews Decl., Ex. F at 3, 9-10 (Blue Cross's summary judgment motion in the previous

ORDER – 3

lawsuit).  In opposition, Ms. Hoppel agreed that 29 U.S.C. § 1055 does not apply to unfunded plans, but argued that there was at least a question of fact as to whether Retirement Agreement was funded by an annuity.  *See* Andrews Decl., Ex. H at 8 (Ms. Hoppel's Opposition).  The court in the previous lawsuit granted summary judgment in favor of Blue Cross, finding that Ms. Hoppel's claims were time-barred.  *See* Andrews Decl., Ex. K (summary judgment order).  The Court of Appeals for the Ninth Circuit affirmed in an unpublished decision.  *See Hoppel v. Blue Cross of Washington and Alaska, Inc.*, 17 F.3d 394 (9th Cir. 1994).

In the lawsuit presently pending, both Ms. Hoppel and Premera have moved for summary judgment, and the court now turns to consider those cross-motions.

### III.   ANALYSIS

**A.   Legal Standards.**

Summary judgment is appropriate if the moving party establishes that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.   Premera is Entitled to Judgment as a Matter of Law Against Ms. Hoppel's Claim for Benefits Under the Retirement Account Because the Retirement**

ORDER – 4

**Agreement is Unfunded and Thus Not Subject to Joint and Survivor Annuity Benefit Provisions.[2]**

In order to resolve the parties' dispute regarding Ms. Hoppel's entitlement to benefits under the Retirement Agreement, the court need answer one question: Does 29 U.S.C. § 1055 apply to the benefits covered by the Retirement Agreement? That section of the Retirement Equity Act requires that certain plans include joint and survivor annuity benefits, but it does not apply to a plan that is "unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(b). If, as Ms. Hoppel argues, the Retirement Agreement is not an unfunded plan, then 29 U.S.C. § 1055 applies and she is entitled to payments under the Retirement Agreement for the rest of her life. But on the other hand, if, as Premera argues, the Retirement Agreement is an unfunded plan, then 29 U.S.C. § 1055 does not apply and Premera has correctly determined that it does not owe Ms. Hoppel any continued payments under the Retirement Agreement since the time of Mr. Hoppel's death.

First, the court must define "unfunded" in order to determine whether the Retirement Agreement is unfunded. A plan is "unfunded" if "benefits thereunder will be paid . . . solely from the general assets of the employer." *Gallione v. Flaherty*, 70 F.3d 724, 725 (2d Cir. 1995). This definition has also been phrased in question form: "[C]an the beneficiary establish, though the plan documents, a legal right any greater than that of an unsecured creditor to a specific set of funds from which the employer is, under the terms of the plan, obligated to pay the deferred compensation?" *Miller v. Heller*, 915 F. Supp. 651, 660 (S.D. N.Y. 1996).

---

[2] Because the court finds that summary judgment in Premera's favor is appropriate on this substantive basis, the court will not address Premera's other arguments for summary judgment, which include the statute of limitations and *res judicata*.

ORDER – 5

Premera argues that the Retirement Agreement is unfunded because the plan terms themselves do not indicate that the payments will be made from any specific set of funds, and Blue Cross's supervisor of payroll and banking stated in a declaration (which was written for use in the prior lawsuit) that payments under the Retirement Agreement were "made directly from the operating budget of [Blue Cross].  These payments are not funded by any annuity contract or insurance contract of any kind."  Andrews Decl., Ex. G.  *See also* Gettman Decl. ¶ 3 ("Premera made the payments under the Retirement Agreement out of its general operating funds.  Premera did not create or maintain a separate fund to make these payments.").

Ms. Hoppel has not produced any evidence showing that the Retirement Agreement payments were paid from a separate fund.  Though she submits documents showing that Premera maintained records of the payments, those records do not establish the existence of a fund.  *See* Pltf.'s Aff. (Dkt. # 34-1) at 45, 63, 71, 78; Pltf.'s Opp'n, Ex. 3.  Premera agrees that it maintained records of payments made, but has produced evidence that those payments were made from Premera's general budget and not a separate fund.  *See* Andrews Decl., Ex. G; Gettman Decl.  Ms. Hoppel has produced no evidence to the contrary.

Indeed, another document submitted by Ms. Hoppel actually supports Premera's position.  Ms. Hoppel has produced a September 10, 1991 letter Mr. Hoppel wrote to a Blue Cross vice president about retirement benefits, which includes the following:

> . . .
> When I talked to Kent Buckles on the phone from Los Angeles, he advised me that Blue Cross had offered to pay me [] $4,066.67 per month [in addition to the two annuities].  I asked how it would be funded.  He stated Blue Cross would not purchase an annuity but was establishing the contract as a liability of the corporation.  We would have felt much more comfortable over the years had Blue Cross actually purchased an annuity.
> . . . I can understand [why] Blue Cross would prefer to self-insure the debt but it has never done much for my comfort zone.  Serious financial reverses

ORDER – 6

>in the fortunes of Blue Cross could wipe out approximately 30% of the total income while I am living (of which the court has awarded Olaree 54%).
>
>. . .

Pltf.'s Mot., Ex. 9. This letter corroborates Premera's evidence establishing that the Retirement Agreement was not a funded plan.

As such, the Retirement Agreement is exempted from ERISA's joint and survivor annuity benefits provision. That provision does not apply, and thus, as a matter of law, Ms. Hoppel is not entitled to receive benefits under the Retirement Agreement after Mr. Hoppel's death.

**C. Premera is Entitled to Judgment as a Matter of Law Against Ms. Hoppel's Claim for Benefits Under a Life Insurance Policy on Mr. Hoppel Because There is No Evidence That Any Such Policy Exists and Premera has Submitted Evidence that It Possesses No Such Policies.**

In addition to a claim for benefits under the Retirement Agreement, Ms. Hoppel also requests the proceeds of Premera's life insurance policies on Mr. Hoppel's life.

Premera has submitted evidence that it never possessed any life insurance policies on Mr. Hoppel. *See* Pierron Decl. ¶ 2; Gettman Decl. ¶ 4. Likewise, Ms. Hoppel's evidence does not establish the existence of any life insurance policies. Though she cites three pieces of evidence to support her claim, none of those documents establish the existence of a valid life insurance policy. First, she cites a January 11, 1990 letter from a Blue Cross employee stating that Premera had "life insurance policy information" in Mr. Hoppel's file, but this document does not establish that Blue Cross actually maintained a policy on Mr. Hoppel's life. *See* Pltf.'s Mot., Ex. at 37. Second, she cites a document of unknown origin that states that "As a retiree, Ms. Hoppel is not covered under a group life insurance policy." Pltf.'s Mot., Ex. at 38. Again, this document does not support Ms. Hoppel's contention that Premera has a life insurance policy. Lastly, Ms. Hoppel cites a November 21, 1985 letter between two Blue Cross employees suggesting that Mr. Hoppel could obtain a life insurance policy worth $500,000 if he took some additional steps. *See*

ORDER – 7

Pltf.'s Mot., Ex. at 84.  Ms. Hoppel has not produced any evidence showing that Mr. Hoppel ever took those steps, and that possibility is foreclosed by Premera's evidence establishing that no such policy exists.  Thus, Ms. Hoppel has failed to establish a factual dispute as to the existence of any Premera life insurance policies on Mr. Hoppel's life, and her claim for insurance proceeds fails as a matter of law.

## IV.  CONCLUSION

For the reasons stated above, the court DENIES Plaintiff's motion (Dkt. # 34) and GRANTS Defendant's motion (Dkt. # 36).

DATED this 10th day of May, 2011.

The Honorable Richard A. Jones
United States District Judge

ORDER – 8